NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SHIRAYA MACK, a Minor, by and through her Parent and Natural Guardian ROSALYN CLARK, : : : : Plaintiffs, : : v. : : ZAMPERLA, INC., and THE MOREY ORGANIZATION, INC., : : : Defendants. : : | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 06-CV-3202 (DMC) |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon Defendant The Morey Organization, Inc.'s ("Morey") motion for summary judgment pursuant to Rule 56(c). Defendant Zamperla, Inc. ("Zamperla") then moved for summary judgment, adopting Morey's motion and asserting that no genuine issue of material fact is present regarding Zamperla's liability. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' motion for summary judgment is **denied**.

**I.    B**ACKGROUND[1]

Morey owned and operated Wild Wheels corporation, which consisted of three

---

[1] The facts set forth in this Opinion are taken from the facts set forth in the Parties' FED. R. CIV. P. 56.1 statements in their respective moving papers.

amusement parks and two water parks on the Wildwood Boardwalk in the City of Wildwood, New Jersey. In November 1997, Zamperla leased an amusement park ride called the Doo Wopper Zig Zag Roller Coaster ("the Ride"), to Morey retaining a security interest. In 1998 Zamperla delivered and installed the Ride at Morey's Wild Wheels Amusement Pier ("the Pier"). Prior to opening for the 2004 season, approximately on or about April 4, 2004, the Ride passed a New Jersey state inspection and received a "Ride Seal" verification sticker.

On July 25, 2004, eleven year old Plaintiff Shiraya Mack ("Mack") and her mother Rosalyn Clark, now known as Rosalyn Wise ("Rosalyn") were patrons at the Pier. Mack was exiting the Ride down the egress stairs when the operator told her to watch her step, however, she slipped injuring her finger. It is unclear what caused Mack to slip. Timothy H. Samson ("Samson"), the Pier's Operations Manager and Safety Supervisor issued an Incident Investigation Report concluding the stairway was wet from rain. Samson also concluded that Mack reached out with her left hand and grabbed the plexiglass to stop her fall, and lacerated her finger on the metal support. Although Rosalyn was present, she failed to see Mack's fall.

## II.   STANDARD OF REVIEW

Summary judgment is granted when all "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The non-movant may not "rely merely on allegations or denials in its own pleading; rather, its response must–by affidavit or as otherwise provided in this rule– set out specific facts showing a genuine issue for trial." Id. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact." Anderson v. Liberty, 477 U.S. 242, 247-48 (1986). Substantive law decides which facts are material. Only facts which might change the overall outcome will preclude an entry of summary judgment. A material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Summary judgment does not require a judge to weigh the evidence and determine the truth but instead determine whether a genuine issue exists. When factual issues can reasonably be resolved in favor of either party a finder of fact and trial is required. The nonmoving party needs to be allowed ample time to perform discovery prior to a ruling on summary judgment. Fed. R. Civ. P. 56(f). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences– including issues of credibility– in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F.Supp. 2d 807, 815 (D.N.J. 2000) aff'd., 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

**III.    DISCUSSION**

While all parties agree Morey was not the "seller" of the Ride, Mack contends the question of material fact relates to whether Morey's maintenance of the egress stairway amounted to negligence. "A proprietor of a store is not an insurer but is merely liable (1) for defects of which he knows, or (2) defects which have existed for so long a time that, by the exercise of reasonable care, he had both an opportunity to discover and to remedy." Thompson v Giant Tiger Corp., 118 N.J.L. 10, 189 A. 649 (E. & A. 1937). Without proof of either the court assumes the defendant employed reasonable care. Id. A mere fall without evidence of why the fall took place does not raise a presumption of negligence. Id.

3

The New Jersey Superior Court articulated the above rule as it applies particularly to amusement parks:

> As a general principle, the proprietor of an amusement park is not an insurer of the safety of patrons and is not bound to protect the public from such obvious risks as are necessarily incidental to the use of the premises or its amusement devices.  The proprietor is, however, bound to exercise reasonable care and to render the premises reasonably safe and fit for the use intended.  When the condition complained of results from wear and tear incident to the normal use of the amusement or to causes that originate in the wrongful conduct of strangers, the operator must be shown to have had knowledge or notice of the condition for sufficient time before the injury to remedy the defect or to safeguard the patron from contact with it.

Clayton v. New Dreamland Roller Skating Rink, Inc., 14 N.J. Super. at 395.  Various kinds of mechanisms and amusements have materially different dangers and hazards.  "What amounts to due care by the owner or operator for the safety of invitees depends in any given case not only on the facts and circumstances of the particular case, but on the nature, construction, manner of operation, and the like, of the particular place of amusement, resort, device, or mechanism in suit."  Id.

### A.   A Genuine Issue of Fact Exists with Regard to Morey's Conduct

Mack asserts that an amusement operator in the State of New Jersey in 2004 would have been subject to the Department of Community Affairs regulations.  Effective on March 6, 2000, these regulations require handrails on both sides of all stairways no less than 34 inches and no more than 42 inches above the leading edge of the treads.  (Pl.'s Br. p. 7).  Photographs taken following the incident show the Ride's egress stairway lacked a handrail on the left side.  The existence of such regulations, as well as Mack's and Samson's deposition testimony give rise to a question of material fact regarding Morey's maintenance of the egress stairway.

"The proprietor of premises to which the public is invited to do business is under a duty to use reasonable care to maintain the premises in a condition reasonably safe for the business invitee's use."  Parmenter v. Jarvis Drug Store, Inc., 48 N.J. Super. 507, 510 (1957).  A reasonable fact finder could conclude that the absent handrail increased the risk of harm to Mack as she slipped on the left side of the egress stairway.  Furthermore, Mack argues the inspection performed by the State of New Jersey on the Ride may not have included the stairway as part of the actual Ride.  Since Mack is the non moving party, all inferences arising from known facts are to be construed in her favor.  See Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993).  A reasonable fact finder could further conclude the regulations set forth by the Department of Community Affairs may apply to rides already in existence before 2000.

Mack provides John S. Posusney, P.E. ("Posusney"), as an expert witness.  Posusney has issued two reports in this case citing both the New Jersey Building Code and Guidelines for Stair Safety in his criticism of Morey's and Zamperla's installation and maintenance of the Ride.  Once again, regulations requiring handrails on both sides of an egress stairway were referenced.  (Pl.'s Br. p. 9).  Posusney concluded that if Morey had employed proper maintenance standards, both the railing and gap/pinch point, wherein Mack's finger was lacerated, the problem could have been quickly and cheaply resolved.  See Id.  "The proprietor is bound to realize the existence of a dangerous condition intrinsic in the structure of his property."  Parmenter, 48 N.J. at 510-11.  The issue of proper maintenance gives rise to a genuine issue of material fact in which a reasonable fact finder could again find for Plaintiff.

While Mack cannot identify what caused her injury, Samson's Incident Investigation Report concludes, while slipping she "went to grab something, running her hand down the

plexiglass panel and most likely lacerated her finger on the metal support brace." (Pl.'s Br. p. 11). Samson's observations were accompanied by photographs taken during his investigation depicting the metal support where there appeared to be blood.

Mack argues the gap had existed since the Ride's installation, six years earlier, because multiple bolts surround the support's four corners. The cause of Mack's injury speaks directly to the outcome of the case and since there are genuine issues of material fact surrounding the facts, summary judgment is inappropriate. "Summary judgement is precluded if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law." Josey, 996 F.2d at 637.

### B. A Genuine Issue of Fact Exists Regarding Zamperla's Design and Installation

Zamperla distributed the Ride and egress stairway to Morey and directed Morey's employees during the installation. While Zamperla apparently produced the drawing for the support braces and plexiglass panels, Valerio Ferrari ("Ferrari"), President and CEO of Zamperla could not recall being involved in the plans. (Pl.'s Br. p. 13). Mack argues the finder of fact could conclude it was through Zamperla's design or installation defect that Mack was injured. Zamperla has failed to provide any evidence which supports the gap/pinch point was designed to be present. This Court agrees with Plaintiff, in that a fact finder could conclude the Ride was defectively designed.

 "Where a substantial risk of injury is implicit in the manner in which a business is conducted, and on the total scene, it is fairly probable that the operator is responsible either in creating the hazard or permitting it to arise or to continue, it would be unjust to saddle the

plaintiff with the burden of isolating the precise failure." Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 430 (1966).  Additionally, the United States Court of Appeals for the Third Circuit has previous categorized summary judgement as a "drastic remedy and made clear that courts are to resolve any doubts as to the existence of genuine issues of fact against the moving parties." Cont'l. Ins. Co., v Bodie, 682 F.2d 436, 438 (3d Cir. 1982).

**IV.    CONCLUSION**

For the reasons stated, it is the finding of this Court that Defendants' motion for summary judgement is **denied**. An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       July 9, 2008
Orig.:      Clerk
cc:         All Counsel of Record
            Hon. Mark Falk, U.S.M.J.
            File